No. 17-2037

# In the United States Court of Appeals for the Third Circuit

CHESAPEAKE APPALACHIA, L.L.C.

PLAINTIFF-APPELLEE

v.

SCOUT PETROLEUM LLC AND SCOUT PETROLEUM II LP

DEFENDANTS-APPELLANTS

**On Appeal from the United States District Court for the Middle District of Pennsylvania (Brann, J.)**

**Civil Action No. 4:14-cv-00620-MWB**

**BRIEF OF PLAINTIFF-APPELLEE**

Daniel T. Donovan
Ragan Naresh
Kirkland & Ellis LLP
655 Fifteenth St. N.W.
Washington, DC 20005
(202) 879-5000

Daniel T. Brier
Myers, Brier & Kelly LLP
425 Spruce St. Suite 200
Scranton, PA 18501
(570) 342-6100

September 1, 2017

*Counsel for Plaintiff-Appellee Chesapeake Appalachia, L.L.C.*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for Plaintiff-Appellee Chesapeake Appalachia, L.L.C. states the following:

Chesapeake Appalachia, L.L.C. is a wholly-owned subsidiary of Chesapeake Energy Corporation, a publicly-held corporation.

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE ARGUMENT ............................................................1

STATEMENT OF THE CASE AND FACTS .............................................3

1.  Scout's Initiation Of AAA Arbitration. .............................................3

2.  Chesapeake's Initiation Of The Declaratory Judgment Action In The District Court...........................................................................4

    A.  The District Court Grants Summary Judgment In Favor Of Chesapeake On "Who Decides," And This Court Affirms. .................................................................................4

    B.  The District Court Grants Summary Judgment In Favor Of Chesapeake On "Clause Construction." ............................5

STANDARD OF REVIEW.......................................................................7

ARGUMENT ...........................................................................................7

1.  Class Arbitration Is Not Permitted Because The Arbitration Clause Provides for Bilateral Arbitration And Is Silent As To Class Arbitration. ................................................................................7

2.  The District Court Correctly Found That *Dickler* Does Not Apply Here. ......................................................................................15

CONCLUSION ......................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AlixPartners, LLP v. Brewington,*
  836 F.3d 543 (6th Cir. 2016)....................................................... 2, 12, 13

*Blunt v. Lower Merion Sch. Dist.,*
  767 F.3d 247 (3d Cir. 2014) .................................................................. 7

*Champ v. Siegel Trading Co.,*
  55 F.3d 269 (7th Cir. 1995) ................................................................ 13

*Chesapeake Appalachia, L.L.C. v. Ostroski,*
  199 F. Supp. 3d 912 (M.D. Pa. 2016)........................................... *passim*

*Chesapeake Appalachia, LLC v. Scout Petrol., LLC,*
  809 F.3d 746 (3d Cir. 2016) ....................................................... *passim*

*Chesapeake Expl., L.L.C. v. Henceroth,*
  No. 4:16CV00150, 2016 WL 5661611 (N.D. Ohio Sept. 29,
  2016) ................................................................................................. 2, 21

*Chico v. Hilton Worldwide, Inc.,*
  No. CV 14-5750-JFW, 2014 WL 5088240 (C.D. Cal. Oct. 7,
  2014) ..................................................................................................... 11

*Dickler v. Shearson Lehman Hutton, Inc.,*
  596 A.2d 860 (Pa. Super. Ct. 1991) ........................................... *passim*

*Dominium Austin Partners, L.L.C. v. Emerson,*
  248 F.3d 720 (8th Cir. 2001)............................................................... 13

*Erie R.R. v. Tompkins,*
  304 U.S. 64 (1938)....................................................................... 19, 20

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP,*
  615 F.3d 159 (3d Cir. 2010) .................................................................. 7

*Herzfeld v. 1416 Chancellor, Inc.*,
    Civil Action No. 14-4966, 2015 WL 4480829 (E.D. Pa. July
    22, 2015) ................................................................................... 11

*Huffman v. Hilltop Cos.*,
    747 F.3d 391 (6th Cir. 2014) ........................................... 13, 16

*JP Morgan Chase Bank, N.A. v. Jones*,
    No. C15-1176RAJ, 2016 WL 1182153 (W.D. Wash. Mar.
    28, 2016) ................................................................................... 12

*NCR Corp. v. Jones*,
    157 F. Supp. 3d 460 (W.D.N.C. 2016) .................................. 12

*Opalinski v. Robert Half Int'l Inc.*,
    677 F. App'x 738 (3d Cir. 2017) .............................. 11, 12, 16

*Opalinski v. Robert Half Int'l Inc.*,
    761 F.3d 326 (3d Cir. 2014) ............................................ 8, 12

*Oxford Health Plans LLC v. Sutter*,
    133 S. Ct. 2064 (2013) ........................................... 13, 14, 15

*Quilloin v. Tenet HealthSystem Phila., Inc.*,
    673 F.3d 221 (3d Cir. 2012) ............................................. 9, 16

*Reed Elsevier, Inc. v. Crockett*,
    734 F.3d 594 (6th Cir. 2013) ....................................... *passim*

*Reed v. Fla. Metro. Univ., Inc.*,
    681 F.3d 630 (5th Cir. 2012) ................................................ 13

*Scout Petrol., LLC v. Chesapeake Appalachia, LLC*,
    137 S. Ct. 40 (2016) ................................................................. 5

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ...................................................... *passim*

*Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*,
    548 F.3d 85 (2d Cir. 2008) ................................................... 17

*Stolt-Nielsen SA v. Animalfeeds Int'l Corp.*,
    435 F. Supp. 2d 382 (S.D.N.Y. 2006) .................................................. 10

*Sutter v. Oxford Health Plans LLC*,
    675 F.3d 215 (3d Cir. 2012) .................................................................. 15

*Tenet HealthSystem Phila., Inc. v. Rooney*,
    Civil Action No. 12-mc-58, 2012 WL 3550496 (E.D. Pa.
    Aug. 17, 2012) ............................................................................... 12, 16

*Toyota Indus. Trucks U.S.A., Inc. v. Citizens Nat'l Bank of
    Evans City*,
    611 F.2d 465 (3d Cir. 1979) .................................................................. 19

*Vilches v. The Travelers Cos.*,
    413 F. App'x 487 (3d Cir. 2011) ...................................................... 9, 16

## SUMMARY OF THE ARGUMENT

The question presented is whether Scout Petroleum LLC and Scout Petroleum II LP (collectively, "Scout") may force Chesapeake Appalachia, L.L.C. ("Chesapeake") into a "class" arbitration when the parties did not contractually agree to such a process and the arbitration clauses are silent as to class arbitration. Under black-letter Supreme Court case law, the answer is clearly "no."

The express language of the arbitration agreement at issue here consistently uses singular (and defined) terms to describe the parties to any arbitration. In other words, it expressly defines the parties and nowhere discusses or suggests class arbitration. Therefore, at best for Scout, the leases are silent on arbitration. But where, as here, an arbitration clause is silent on class arbitration, the arbitration clause does not permit class arbitration. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) ("[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so."). This Court has already recognized that the arbitration clause in the leases at issue here is "silent as to the availability of classwide arbitration." *See Chesapeake*

1

*Appalachia, LLC v. Scout Petrol., LLC*, 809 F.3d 746, 758 (3d Cir. 2016) (citation omitted), *cert. denied*, 137 S. Ct. 40 (2016). This fact is dispositive, and the district court's ruling should be affirmed.

Over and over again, courts faced with similar arbitration clauses have held that class arbitration is not permitted. *See Chesapeake Appalachia, L.L.C. v. Ostroski*, 199 F. Supp. 3d 912, 916-17 (M.D. Pa. 2016) (analyzing identical arbitration clause and holding that "[b]ecause the plain language of the arbitration clause in the Lease is silent as to class arbitration, we find that the Lease does not allow Defendants to compel it"); *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 599-600 (6th Cir. 2013) ("The principal reason to conclude that this arbitration clause does not authorize classwide arbitration is that the clause nowhere mentions it."), *cert. denied*, 134 S. Ct. 2291 (2014); *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 553 (6th Cir. 2016) (holding class arbitration not authorized where arbitration clause is silent); *Chesapeake Expl., L.L.C. v. Henceroth*, No. 4:16CV00150, 2016 WL 5661611, at *5-7 (N.D. Ohio Sept. 29, 2016) (holding that class arbitration is not permitted "because the arbitration provisions are silent as to class arbitration"). Faced with this overwhelming body of case law and binding precedent

from the Supreme Court, the district court in this case rightfully found that the arbitration clause in the leases did not permit class arbitration, and its holding should be affirmed.  *See* JA 4 (Dist. Ct. Order), JA 5 (Dist. Ct. Judgment), JA 6-18 (Dist. Ct. Op.).

## STATEMENT OF THE CASE AND FACTS

Scout bought interests in certain oil and gas leases in which Chesapeake is the counterparty ("the Leases").  *See* JA 22-23 ¶¶ 14-15 (Compl.).  Scout is not an original counterparty to these Leases and was not involved in the lease negotiations.  *See* JA 23 ¶ 20 (Compl.).

### 1.   Scout's Initiation Of AAA Arbitration.

On March 17, 2014, Scout initiated AAA arbitration against Chesapeake, *Scout Petroleum LLC v. Chesapeake Appalachia, L.L.C.*, AAA No. 14-20-1400-0339, purporting to arbitrate, on behalf of itself and a putative "class," the interpretation of Scout's newly-acquired Leases. *See* JA 32-40 (Corrected Arb. Demand).  Scout claims that Chesapeake took improper deductions from royalty payments.  *See id.*

The Leases include the following arbitration provision:

ARBITRATION.  In the event of a disagreement between Lessor and Lessee concerning this Lease, performance thereunder, or damages caused by Lessee's operations, the resolution of all such disputes shall be determined by arbitration in accordance with the rules of the American

3

Arbitration Association. All fees and costs associated with the arbitration shall be borne equally by Lessor and Lessee.

*See* JA 42-123 at JA 44, 48, 54, 58, 63, 67, 72, 98, 102, 106, 110 (Leases).

The arbitration provision nowhere refers to class arbitration and, in fact, uses singular language ("Lessor," "Lessee," "this Lease") with regard to a "disagreement" that may give rise to arbitration. *See id.* Accordingly, Chesapeake objected to the arbitration proceedings because it did not agree to resolve disputes in "class" arbitration.

### 2. Chesapeake's Initiation Of The Declaratory Judgment Action In The District Court.

Chesapeake promptly initiated a federal declaratory judgment action in the U.S. District Court for the Middle District of Pennsylvania against Scout, seeking two declarations: (1) that the court, not arbitrators, must decide whether class arbitration is available pursuant to the Leases (the "who decides" question), and (2) that class arbitration is not available pursuant to the Leases (the "clause construction" question). *See* JA 26-29 ¶¶ 34-47 (Compl.).

### A. The District Court Grants Summary Judgment In Favor Of Chesapeake On "Who Decides," And This Court Affirms.

On October 16, 2014, the district court granted Chesapeake's motion for summary judgment on the "who decides" question, and on

December 19, 2014, denied Scout's Motion for Reconsideration.  *See* JA 133-72 (Dec. 19, 2014 Mem. Op.).  The district court found that "[t]he contract here is silent or ambiguous as to class arbitration[.]"  JA 159 (Dec. 19, 2014 Mem. Op.).

Scout Petroleum appealed these rulings on January 30, 2015.  On January 5, 2016, this Court affirmed the district court's judgments, holding that the court—not arbitrators—was to decide class arbitrability. This Court explained "that the Leases are, at least in a certain sense, 'silent as to the availability of classwide arbitration,'" because they "do not expressly mention class arbitration [or] the availability of class arbitration." *Scout Petrol.*, 809 F.3d at 758 (citations omitted).  The Court explained that it was guided by the fact "the Leases consistently use singular (and defined) terms" such as "Lessor," "Lessee," and "this Lease." *Id.* at 759-60.  Scout filed a petition for writ of certiorari on April 1, 2016.  On October 3, 2016, the United States Supreme Court denied Scout's petition.  *See* 137 S. Ct. 40 (2016).

### B.    The District Court Grants Summary Judgment In Favor Of Chesapeake On "Clause Construction."

On January 10, 2017, Chesapeake moved for summary judgment on Count II of its Complaint, the "clause construction" question.  *See*

JA 234-38 (Chesapeake's Mot. for Summ. J. on Count II); JA 239-54 (Chesapeake's Brief in Supp. of Mot. for Summ. J. on Count II). Scout simultaneously moved to dismiss Count II of Chesapeake's Complaint. *See* JA 195-200 (Scout's Mot. to Dismiss Count II); JA 201-26 (Scout's Brief in Supp. of Mot. to Dismiss Count II). On April 5, 2017, the district court heard oral argument on both Chesapeake's and Scout's motions. *See* JA 534-84 (Oral Arg. Tr.)

On April 28, 2017, the district court granted summary judgment on Count II in Chesapeake's favor and denied Scout's motion to dismiss. JA 6-18 (Dist. Ct. Op.). Relying on *Stolt-Nielsen* and *Reed Elsevier*, the district court held that "what the plain language of the leases allow is individual or bilateral arbitration, not a class arbitration." JA 17. The district court also found it persuasive that another judge in the same district, Judge Jones, reached the very same conclusion when faced with substantially similar arguments and an identical arbitration clause. JA 11-12 (discussing *Ostroski*, 199 F. Supp. 3d 912). In *Ostroski*, Judge Jones held that "[b]ecause the plain language of the arbitration clause in the Lease is silent as to class arbitration, we find that the Lease does not

allow Defendants to compel it." 199 F. Supp. 3d at 917. On May 5, 2017, Scout appealed the district court's order. JA 1-3 (Notice of Appeal).

## STANDARD OF REVIEW

This Court employs a plenary standard in reviewing orders entered on motions for summary judgment and motions to dismiss. *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014); *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 163 (3d Cir. 2010). This means that the Court may affirm the district court "'on any grounds supported by the record,' even if the court did not rely on those grounds." *Blunt*, 767 F.3d at 265 (citation omitted).

## ARGUMENT

**1.    Class Arbitration Is Not Permitted Because The Arbitration Clause Provides for Bilateral Arbitration And Is Silent As To Class Arbitration.**

The Supreme Court has held that class arbitration is not permitted where an arbitration clause is silent as to the availability of class arbitration, *see Stolt-Nielsen*, 559 U.S. at 684-87, and the arbitration clause at issue here is silent as to the availability of class arbitration. Indeed, this Court has already addressed the silence of the arbitration clause at issue here as to the availability of class arbitration. *See Scout*

*Petrol.*, 809 F.3d at 758.  This is dispositive, and the district court should be affirmed on this basis alone.

The Supreme Court's rule from *Stolt-Nielsen* is not only binding law, but it makes good sense.  The animating principle from *Stolt-Nielsen* is that class arbitration is fundamentally different than bilateral arbitration.  Because of those differences, and because arbitration is a matter of contract, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party ***agreed*** to do so"—mere silence on the question of class arbitrability is not enough.  559 U.S. at 684.  This Court has repeatedly explained this very same principle.  *See Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 334 (3d Cir. 2014) ("Traditional individual arbitration and class arbitration are so distinct that a choice between the two goes, we believe, to the very type of controversy to be resolved."); *Scout Petrol.*, 809 F.3d at 756 (noting "the fundamental differences between bilateral and class arbitration and the serious consequences that arise from proceeding with one type rather than the other").

Animated by that principle, the Supreme Court set forth two rules in *Stolt-Nielsen* that govern here.  *First*, courts may not infer an

agreement to arbitrate as a class "solely from the fact of the parties' agreement to arbitrate."   559 U.S. at 685.   Rather, the party pursuing class arbitration must show ***affirmative evidence*** that the parties agreed to submit to class arbitration.  *Id.* at 685-87.  *Second*, the absence of a provision *precluding* class arbitration is not evidence that the parties *agreed* to class arbitration.  *Id.* at 684.  Silence is not enough.  *See id.*; *see also Vilches v. The Travelers Cos.*, 413 F. App'x 487, 492 n.3 (3d Cir. 2011) ("[t]he differences between bilateral and class action arbitration are too great for arbitrators to presume . . . that the parties' mere silence on the issue of class-action arbitration constitutes consent" to class arbitration (ellipsis in original; citation omitted)); *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 232 (3d Cir. 2012) ("Silence regarding class arbitration generally indicates a prohibition against class arbitration . . . .").

The district court properly applied these rules and concluded that class arbitration is not permitted here because the arbitration clause is silent as to class arbitration.   *See* JA 11-15.  Indeed, this ruling was required by *Stolt-Nielsen* given that this Court had previously explained the "silence" of the Leases at issue here "as to the availability of classwide

arbitration," noting that they "do not expressly mention class arbitration [or] the availability of class arbitration."  *Scout Petrol.*, 809 F.3d at 758 (citation omitted).

Nor can there be a serious question that the Leases are silent as to the availability of classwide arbitration.  The text of the Leases is silent as to classwide arbitration.  This conclusion becomes even clearer when compared side-by-side against the "silent" arbitration clause at issue in *Stolt-Nielsen*:

| *Scout* Arbitration Clause | *Stolt-Nielsen* Arbitration Clause |
| --- | --- |
| ARBITRATION.  In the event of a disagreement between Lessor and Lessee concerning this Lease, performance thereunder, or damages caused by Lessee's operations, the resolution of all such disputes shall be determined by arbitration in accordance with the rules of the American Arbitration Association.  All fees and costs associated with the arbitration shall be borne equally by Lessor and Lessee. | Any dispute arising from the making, performance or termination of this Charter Party shall be settled in New York, [each party] appointing an arbitrator . . . .  Such arbitration shall be conducted in conformity with the provisions and procedure of the United States Arbitration Act . . . .  Any and all differences and disputes of whatsoever nature . . . shall be put to arbitration . . . . |

JA 44, 48, 54, 58, 63, 67, 72, 98, 102, 106, 110; *Stolt-Nielsen SA v. Animalfeeds Int'l Corp.*, 435 F. Supp. 2d 382, 384 n.1 (S.D.N.Y. 2006).[1]

If anything, the arbitration clause in this case underscores that the parties did not agree to class arbitration, because it refers to the singular

form—it refers to disagreements "between Lessor and Lessee concerning this Lease." As this Court has previously explained, "[w]e find it significant that the Leases consistently use singular (and defined) terms to describe the respective parties to any arbitration proceeding and the dispute to be arbitrated." *See Scout Petrol.*, 809 F.3d at 759-60. This holding aligns with this Court's prior holding in *Opalinski v. Robert Half International Inc.*, 677 F. App'x 738 (3d Cir. 2017), where the Court found it to be a "critical point" that "the agreement specifies that the dispute or claim must arise out of or relate to the *particular* employee's employment, not *any* employee's employment." *Id.* at 742. Judge Brann found the same fact persuasive. *See* JA 17.[2]

The bottom line is that when faced with the circumstances presented here, this Court and other district courts in this circuit have

---

[2] Many other courts have reached the very same conclusion based on similar contractual language. For example, in *Reed Elsevier*, the court "conclude[d] that this arbitration clause does not authorize classwide arbitration" because "the clause limits its scope to claims 'arising from or in connection with *this Order*,' as opposed to other customers' orders." 734 F.3d at 599-600. *See also Herzfeld v. 1416 Chancellor, Inc.*, Civil Action No. 14-4966, 2015 WL 4480829, at *8 (E.D. Pa. July 22, 2015) (disallowing class arbitration where an arbitration agreement "refers only to arbitration affecting 'both parties,'" because "there is no 'meeting of the minds' on this monumental change to the parties' agreement"), *aff'd*, 666 F. App'x 124 (3d Cir. 2016); *Chico v.*

routinely reached the same conclusion that the district court reached here.[3]  Other circuits have concluded precisely the same.[4]  The weight of

_____

*Hilton Worldwide, Inc.*, No. CV 14-5750-JFW (SSx), 2014 WL 5088240, at *12 (C.D. Cal. Oct. 7, 2014) (compelling individual arbitration and holding that arbitration agreements do not authorize class arbitration when they make no mention of groups, putative class members, or other persons); *JP Morgan Chase Bank, N.A. v. Jones*, No. C15-1176RAJ, 2016 WL 1182153, at *9 (W.D. Wash. Mar. 28, 2016) (compelling individual arbitration where the contracts only contemplate bilateral arbitration because they "consistently refer to the Defendants in the singular"), *appeal filed*, No. 16-35313 (9th Cir. Apr. 27, 2016), *and appeal filed*, No. 16-35396 (9th Cir. May 12, 2016); *NCR Corp. v. Jones*, 157 F. Supp. 3d 460, 467-68 (W.D.N.C. 2016) (disallowing class arbitration in part because "the exclusively bilateral terms in the face of the contract weigh in favor of the Agreement only covering bilateral disputes"); *AlixPartners*, 836 F.3d at 553 (compelling individual arbitration where the arbitration clause limited scope "to claims 'arising out of or in connection with any aspect of *this Agreement*,' as opposed to other employees' . . . agreements, and states that the arbitrator's decision 'shall be final and binding as to *both parties*'").

[3]  *See, e.g.*, *Opalinski*, 677 F. App'x at 742 (affirming that "absence of any explicit mention of class arbitration in the employment agreements weighed against a finding that it was authorized by the agreements"); *Ostroski*, 199 F. Supp. 3d at 917 (finding that "the jurisprudence is abundantly clear," and holding that "[b]ecause the plain language of the arbitration clause in the Lease is silent as to class arbitration," the lease did not allow it); *Tenet HealthSystem Phila., Inc. v. Rooney*, Civil Action No. 12-mc-58, 2012 WL 3550496, at *5 (E.D. Pa. Aug. 17, 2012) (affirming arbitration award prohibiting class arbitration where the contract "did not address the issue of class arbitration, let alone authorize it").

[4]  For example, in *Reed Elsevier*, which the district court and this Court have both found to be "persuasive," *see Opalinski*, 761 F.3d at 334-35

the case law is overwhelming.    The district court's ruling was a straightforward application of these same well-established principles and should be affirmed.

Scout's efforts to escape the controlling law all fail badly.  *First*, in arguing that the district court "violated . . . *Stolt-Nielsen*" by "refus[ing] to examine the breadth of the arbitration clause" fails, Scout grossly

---

("[Reed Elsevier's] analysis is persuasive and guides our own."), the Sixth Circuit considered a materially-indistinguishable arbitration clause and held that the arbitration clause did not permit class arbitration: "[t]he principal reason to conclude that this arbitration clause does not authorize classwide arbitration is that the clause nowhere mentions it."  *Reed Elsevier*, 734 F.3d at 599-600; *see also AlixPartners*, 836 F.3d at 553 ("This arbitration clause is silent on the availability of classwide arbitration, and we may not presume from 'mere silence' that the parties consented to it." (citation omitted)); *Huffman v. Hilltop Cos.*, 747 F.3d 391, 398-99 (6th Cir. 2014) ("[T]he parties' arbitration clause nowhere mentions classwide arbitration. We therefore conclude that the arbitration clause does not authorize classwide arbitration, and hold that the plaintiffs must proceed individually." (citation omitted)); *Reed v. Fla. Metro. Univ., Inc.*, 681 F.3d 630, 643-44 (5th Cir. 2012) (finding that silence in an agreement does not "'constitute[] consent' to class arbitration" (citation omitted)), *abrogated on other grounds by Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064 (2013); *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 728-29 (8th Cir. 2001) (holding that the district court did not err by compelling individual, rather than class, arbitration because the relevant agreements were silent as to class arbitration); *Champ v. Siegel Trading Co.*, 55 F.3d 269, 275 (7th Cir. 1995) ("the FAA forbids federal judges from ordering class arbitration where the parties' arbitration agreement is silent on the matter").

mischaracterizes the district court's opinion.  Br. at 8, 12.  The district court did not refuse to analyze the language of the arbitration clause or find any of the language to be irrelevant, as Scout contends.  Nor did the district court make a "pivotal assertion . . . that an arbitration clause is 'silent' as to class arbitration if those words do not appear in its text."  *Id*. at 10.  Rather, the district court carefully examined the entire arbitration clause and ultimately reached a conclusion that lines up precisely with this Court's prior holding: "[t]he language in this matter is written in the singular, which indicates individual or bilateral arbitration."  JA 17.  The district court reached the very same conclusion as another district court that analyzed an identical arbitration clause.  *See Ostroski*, 199 F. Supp. 3d at 917 (in analyzing identical arbitration clause, holding that "[b]ecause the plain language of the arbitration clause in the Lease is silent as to class arbitration, we find that the Lease does not allow Defendants to compel it").  This is the very point that this Court addressed the first time around on the "who decides" question, as discussed *supra* at pp. 4-5.

*Second*, in relying on *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064 (2013), Scout completely misreads it.  Br. at 10-12.  The primary

issue in *Sutter* was the standard of review that applied to an arbitrator's class arbitrability determination where—unlike here—the parties *agreed* to submit class arbitrability to an arbitrator.[5]  Thus, the Supreme Court held that "the sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong."  *Sutter*, 133 S. Ct. at 2068; *see also id.* n.2 (explaining that it would have been a different question with a potentially different outcome had the parties not submitted questions of class arbitrability to an arbitrator).[6]

## 2.    The District Court Correctly Found That *Dickler* Does Not Apply Here.

Scout's remaining arguments focus exclusively on a twenty-five year old case—*Dickler v. Shearson Lehman Hutton, Inc.*, 596 A.2d 860

---

[5]  As discussed above, *supra* p. 4, Chesapeake objected to issues of class arbitrability being submitted to an arbitrator and initiated this declaratory judgment action.

[6]  Nor is the arbitration clause at issue in *Sutter* analogous to the one at issue here.  The *Sutter* clause states that "[n]o civil action concerning any dispute arising under this Agreement shall be instituted before any court, and all such disputes shall be submitted to final and binding arbitration[.]"  133 S. Ct. at 2067.  As the Third Circuit in that case noted, the arbitrator focused on the language "'no civil action . . . shall be instituted in any court'" and found that to mean that "a class action may not be instituted in a court of law.  'All such disputes' must go to arbitration."  *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 223

(Pa. Super. Ct. 1991)—that predates *Stolt-Nielsen* and that simply cannot carry the weight Scout asks it to bear.

*First*, as the district court noted, *Dickler* does not accurately state the current law on class arbitration.  *See* JA 16.  *Dickler* held (in 1991) that silence on class arbitration can nonetheless permit class arbitration.  *See* 596 A.2d at 867.  That holding is no longer good law: since *Dickler* was decided, the Supreme Court, the Third Circuit, and numerous other circuits—all applying the FAA—have expressly and unequivocally rejected *Dickler*'s holding in this regard.  *See Stolt-Nielsen*, 559 U.S. at 684-87 ("the parties' mere silence on the issue of class-action arbitration" does not "constitute[] consent to resolve their disputes in class proceedings"); *see also, e.g., Quilloin*, 673 F.3d at 232; *Vilches*, 413 F. App'x at 492 n.3; *Opalinski*, 677 F. App'x at 742; *see also Huffman*, 747 F.3d at 398-99; *Reed Elsevier*, 734 F.3d at 599-600; *Tenet HealthSystem Phila., Inc.*, 2012 WL 3550496, at *5.  Given this extensive precedent, the district court correctly held that "I can discern no plausible legal basis for

---

(3d Cir. 2012).  No language analogous to "no civil action . . . shall be instituted in any court" is present in the arbitration clause at issue here.

this Court to rely on *Dickler* when decisions, contrary to it, have been made in this Court, various Courts of Appeals and by the United States Supreme Court." JA 16.

*Second*, Scout's claim that "*Dickler* is currently the law of Pennsylvania and has been subsequently followed and applied by Pennsylvania courts" is misleading. Br. at 25. The truth is that since *Stolt-Nielsen*, **no court** has cited *Dickler* for the reason Scout relies on it. In fact, *Dickler* was cited by the lower court in *Stolt-Nielsen SA v. AnimalFeeds International Corp.*, 548 F.3d 85, 101 n.15 (2d Cir. 2008), *rev'd and remanded*, 559 U.S. 662 (2010)—the very decision that was reversed by the Supreme Court, *see* 559 U.S. 662. Since this reversal, no other court has attempted to invoke *Dickler* for the proposition that Scout now tries to. The district court correctly concluded that there is "no plausible legal basis" to "rely on *Dickler* when decisions, contrary to it, have been made in this Court, various Courts of Appeals, and by the United States Supreme Court." JA 16.

*Third*, Scout's claim that there is "no material difference" between the arbitration clause at issue here and the arbitration clause from *Dickler* is also wrong. Br. at 14-15. In fact, the district court found that

the exact opposite is true: "[t]he language in this matter is written in the singular, which indicates individual or bilateral arbitration . . . .  The clause at issue in *Dickler* was drafted plurally . . . .  This is what distinguishes *Dickler* - the actual language utilized in the contract." JA 17.  Moreover, as discussed above, numerous cases have analyzed arbitration clauses identical to or nearly identical to the one at issue here, and all have concluded that the language in this arbitration clause allows only for bilateral arbitration, because such language is at best silent and, if anything, underscores that the parties intended to limit arbitration to bilateral disputes.  *See supra* pp. 10-14.

*Fourth*, the district court did not "improperly revise[] the holding in *Dickler*," as Scout claims.  Br. at 26-31 (capitalization omitted).  Scout argues that, by focusing on different language in the *Dickler* arbitration clause than the Pennsylvania Superior Court focused on, the district court "improperly revised" *Dickler*'s holding.  Br. at 26-27.  This is nonsensical.  There was no "revision" of *Dickler*.  Scout put the *Dickler* arbitration clause at issue in this case and the district court analyzed it.  Scout itself argues that an arbitration clause must be construed in its

entirety, *see, e.g.*, Br. at 8, and that is precisely what the district court did.

*Fifth*, Scout's "*Erie* argument" fails as well. Br. at 18-26. As a threshold matter, Scout has waived this argument. Scout never so-much as cited *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), to the district court, let alone devote an entire section of its brief below to contending that the district court had an obligation under *Erie* to follow *Dickler* notwithstanding the binding precedent from the Supreme Court in *Stolt-Nielsen*.[7] *See Toyota Indus. Trucks U.S.A., Inc. v. Citizens Nat'l Bank of Evans City*, 611 F.2d 465, 470 (3d Cir. 1979) (refusing to consider an argument raised for the first time on appeal). And Scout's *Erie* argument fails on its merits as well. The question of "clause construction" addressed by the district court arises under the Federal Arbitration Act, not Pennsylvania law. *See Ostroski*, 199 F. Supp. 3d at 915-16. Indeed, Scout acknowledges that the FAA applies to this dispute, and

---

[7] Ironically, in a footnote, Scout contends that *Chesapeake* "waived" any argument that, under the *Erie* doctrine, the Pennsylvania Supreme Court would overrule *Dickler*. *See* Br. at 19 n.9. This is precisely backwards. Scout never made an *Erie* argument below, and thus cannot now argue that Chesapeake "waived" a response to an argument that was never made.

Chesapeake agrees. *See* Br. at 23. Thus, the *Erie* doctrine is inapposite here.

Finally, Scout's attack on *Ostroski* as "legal[ly] insignifican[t]" misses the point. Br. at 23. Whether or not the *Ostroski* opinion is the "law of the case," the fundamental point remains: multiple courts have analyzed the arbitration clause at issue in this case, have properly found it to be silent as to class arbitration and therefore does not permit class arbitration, and have rejected the argument that *Dickler* requires a different result. *See Ostroski*, 199 F. Supp. 3d at 917. Scout's attempts to discredit *Ostroski* by relying on the fact that the *Ostroski* opinion did not directly address *Dickler*, Br. at 22-24, plainly fail. The briefing in that case reveals that the defendant there advanced similar arguments regarding *Dickler* as Scout does here. Thus, the district court fully considered the defendant's arguments and ultimately concluded that they were unpersuasive because "the jurisprudence is abundantly

clear"—where, as here, an arbitration agreement is silent as to class arbitration, it is not allowed.  *Ostroski*, 199 F. Supp. 3d at 917.

## CONCLUSION

Chesapeake respectfully requests that the Court affirm the district court's April 28, 2017 Order.

September 1, 2017                    Respectfully submitted,

                                     */s/ Daniel T. Donovan*

Daniel T. Brier                      Daniel T. Donovan
Myers, Brier & Kelly LLP             Ragan Naresh
425 Spruce St. Suite 200             Kirkland & Ellis LLP
Scranton, PA 18501                   655 Fifteenth St. N.W.
(570) 342-6100                       Washington, DC 20005
                                     (202) 879-5000

*Counsel for Plaintiff-Appellee Chesapeake Appalachia, L.L.C.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2017, a copy of the foregoing was filed electronically and via email. Notice of this filing will be sent to all parties who have appeared in this action via the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Daniel T. Donovan*
Daniel T. Donovan

*Counsel for Plaintiff-Appellee*
*Chesapeake Appalachia, L.L.C.*

## CERTIFICATE OF COMPLIANCE WITH L.A.R. 31.1(c)

I hereby certify that the text of the electronic brief is identical to the text of the paper copies being filed.  I further certify that on September 1, 2017, I caused a virus check to be performed on the electronically filed copy of this motion using the following virus software: Microsoft Forefront Endpoint Protection, version 4.3.220.0.  No virus was detected.

/s/ *Daniel T. Donovan*
Daniel T. Donovan

*Counsel for Plaintiff-Appellee*
*Chesapeake Appalachia, L.L.C.*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I hereby certify that this brief complies with the page limitations of Fed. R. App. P. 32(a)(7)(A).  This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6).

/s/ *Daniel T. Donovan*
Daniel T. Donovan

*Counsel for Plaintiff-Appellee*
*Chesapeake Appalachia, L.L.C.*

## CERTIFICATE OF BAR MEMBERSHIP

I hereby certify that at least one attorney whose name appears on the brief is a member of the bar of this Court.

/s/ *Daniel T. Donovan*
Daniel T. Donovan

*Counsel for Plaintiff-Appellee*
*Chesapeake Appalachia, L.L.C.*